## UNITED STATES *v.* CARDIFF.

No. 27.   Argued November 17, 1952.—Decided December 8, 1952.

*James L. Morrisson* argued the cause for the United States.   With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Murray, Carl H. Imlay* and *William W. Goodrich.*

*John Lichty* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Respondent was convicted of violating § 301 (f) of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, 21 U. S. C. § 331 (f).   That section prohibits "The refusal to permit entry or inspection as authorized by section 704."[1]   Section 704 authorizes the federal officers or employees "after first making request and obtaining permis-

---

[1] The violation is made a misdemeanor by 21 U. S. C. § 333.

sion of the owner, operator, or custodian" of the plant or factory "to enter" and "to inspect" the establishment, equipment, materials and the like "at reasonable times." [2]

Respondent is president of a corporation which processes apples at Yakima, Washington, for shipment in interstate commerce. Authorized agents applied to respondent for permission to enter and inspect his factory at reasonable hours. He refused permission, and it was that refusal which was the basis of the information filed against him and under which he was convicted and fined. 95 F. Supp. 206. The Court of Appeals reversed, holding that § 301 (f), when read with § 704, prohibits a refusal to permit entry and inspection only if such permission has previously been granted. 194 F. 2d 686. The case is here on certiorari. 343 U. S. 940.

The Department of Justice urges us to read § 301 (f) as prohibiting a refusal to permit entry or inspection at any reasonable time. It argues that that construction is needed if the Act is to have real sanctions and if the benign purposes of the Act are to be realized. It points out that factory inspection has become the primary investigative device for enforcement of this law, that it is from factory inspections that about 80 percent of the violations are discovered, that the small force of inspectors makes factory inspection, rather than random sampling

---

[2] Section 704 reads as follows: "For purposes of enforcement of this Act, officers or employees duly designated by the Administrator, after first making request and obtaining permission of the owner, operator, or custodian thereof, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein."

of finished goods, the only effective method of enforcing the Act.

All that the Department says may be true. But it does not enable us to make sense out of the statute. Nowhere does the Act say that a factory manager must allow entry and inspection at a reasonable hour. Section 704 makes entry and inspection conditioned on "making request and obtaining permission." It is that entry and inspection which § 301 (f) backs with a sanction. It would seem therefore on the face of the statute that the Act prohibits the refusal to permit inspection only if permission has been previously granted. Under that view the Act makes illegal the revocation of permission once given, not the failure to give permission. But that view would breed a host of problems. Would revocation of permission once given carry the criminal penalty no matter how long ago it was granted and no matter if it had no relation to the inspection demanded? Or must the permission granted and revoked relate to the demand for inspection on which the prosecution is based? Those uncertainties make that construction pregnant with danger for the regulated business. The alternative construction pressed on us is equally treacherous because it gives conflicting commands. It makes inspection dependent on consent and makes refusal to allow inspection a crime. However we read § 301 (f) we think it is not fair warning (cf. *United States* v. *Weitzel,* 246 U. S. 533; *McBoyle* v. *United States,* 283 U. S. 25) to the factory manager that if he fails to give consent, he is a criminal. The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid (cf. *United States* v. *Cohen Grocery Co.,* 255 U. S. 81) may be as much of a trap for the innocent as the ancient laws of Caligula. We cannot sanction taking a

man by the heels for refusing to grant the permission which this Act on its face apparently gave him the right to withhold. That would be making an act criminal without fair and effective notice. Cf. *Herndon* v. *Lowry,* 301 U. S. 242.

*Affirmed.*

MR. JUSTICE JACKSON concurs in the result.

MR. JUSTICE BURTON dissents.